**No. 43671.**—Petition 5982–R of Freedman & Slater, Inc. (New York).

DALLINGER, Judge: This petition was filed under section 489 of the Tariff Act of 1930 for remission of additional duties imposed by the collector of customs at the port of New York on a particular importation of dogskins imported from Tientsin, China, in October 1939, and which dogskins were entered at less than the final appraised value.

So far as here pertinent the petition reads:

To the Honorable, UNITED STATES CUSTOMS COURT:

1. Your petitioner, FREEDMAN & SLATER, INC., respectfully represents that it is a corporation existing under and by virtue of the State of New York; that its principal place of business is at New York City and that FREEDMAN & SLATER, INC., through its officers and employees prepared the above mentioned entry for the account of N. I. Levine of 299 Broadway who was named as the ultimate consignee, Freedman & Slater acted as customs brokers and in no other capacity for the party in interest; that in connection with the invoice used for making the instant entry the Chinese currency stated thereon was for 680 Yuan dollars; that

it was noticed by both the importer and the clerk acting for the petition that the resultant value using the rate of exchange as of the date of shipment (.052433) was very low; that the invoice was not submitted to the Appraiser prior to entry because the merchandise was about to go into General Order Warehouse; that the petitioner's clerk believed the question of value would be straightened out by an amendment using a higher rate of exchange (either the rate of exchange prevailing at the date of order or any other rate the Appraiser might assess) that the petitioner knew the Yuan dollar had fallen tremendously, in fact, the rate of exchange existant at the time of the original shipment to the United States was approximately 30¢.

2. That the original importation, warehousing and re-exportation of the merchandise was not made with an intent to defraud the revenue of the United States by paying duty on a lower value; that such fact is apparent from the letter of the importer submitted herewith together with supporting documents.

3. That your petitioner and those employed by it in connection with the importation and entry here in question believe that the entered value was the correct dutiable value required by law.

4. That your petitioner's belief that its entered value was correct was based upon its knowledge and experience of market conditions, the knowledge and experience of those in its employ and to such inquiries as were compatible with the nature of its business, the time at its disposal and the circumstances of the case.

5. That neither your petitioner nor anyone employed by him in connection with the importation and entry here in question, had any knowledge at the time of entry, or at any time prior thereto, of any foreign value or export value in the country of exportation at the time of exportation, for the merchandise in question, higher than the value at which the merchandise was entered.

WHEREFORE your petitioner respectfully requests that an order be issued to the Collector of Customs at the port of New York, directing that the additional duties accruing under the provisions of Section 489 of the Tariff Act of 1930 be remitted.

FREEDMAN & SLATER, INC.
by Irving D. Slater.

At the hearing held at New York City on January 18, 1940, Nathan Isai Levine, the ultimate consignee of the merchandise involved herein, and Edward A. Ryan, chief entry clerk of the plaintiff corporation the nominal petitioner herein, appeared as witnesses, and their testimony corroborates substantially the allegations set forth in said petition.

It also appears from the testimony of the witness Levine that the dogskins in question were originally shipped from China to the United States in 1937, being consigned to the Industrial Silk Mills while the said Levine was still in China; that the consignee being unable to sell said dogskins they were placed in a bonded warehouse where they were kept for 2 years; that when Levine returned to the United States in April, 1939, he tried to sell said dogskins in the market but was unable to do so, whereupon they were sent back to China where the company from which they had been originally purchased was afraid to take delivery because the Japanese Government had imposed an embargo thereon; that consequently the said dogskins were shipped back to the United States and Freedman & Slater, Inc., was instructed to clear them through the customs, that all the documents in the case were handled by Mr. Ryan of said corporation; that when the latter figured the estimated duty at 9 cents per skin, the witness told him that such value was too low; that Ryan replied that the merchandise was about to go into general order warehouse; that the witness did not understand the meaning of that term and thought that the matter would be adjusted by Mr. Ryan with the customs officials; that it was never the witness' intention to deceive the appraiser or any other Government official or to defraud the revenue of the United States; and that he had been importing merchandise since 1924 and this was the first time that his entered value was ever advanced.

In our opinion the cross-examination by Government counsel failed to disturb the testimony of petitioner's witnesses on direct.

The Government offered in evidence the testimony of Frederick W. Stubbe, examiner of merchandise at the port of New York, who passed the present dogskins. He testified that Mr. Levine came to see him twice; that on his first visit he submitted the invoice and an insurance policy insuring the merchandise for $150, which policy was admitted in evidence as Exhibit 1; that he did not mention Mr. Ryan's name; that on his second visit, on being asked why he had not mentioned on his first visit that the merchandise in question had been previously imported and reexported to China, Levine said that he thought the broker had informed the witness of all the facts.

Upon recross examination the witness testified in part as follows:

R. X Q. Mr. Levine said that he agreed that the value was entirely too low?—A. Yes.

R. X Q. And Mr. Levine's brokers made contacts with your office for the purpose of making an amendment to the entry?—A. Right.

 *   *    *    *    *    *

R. X Q. And the Customs Agency Service reported that there was no basis for any seizure or any fraud in connection with this shipment prior to the appraisement; is that right?—A. None that they had at that time.

R. X Q. They reported that to you prior to your appraisement?—A. By telephone.

R. X Q. Special Agent Murphy so informed you?—A. That is right.

On the record we are satisfied that throughout the entire transaction both the petitioner herein and the ultimate consignee of the involved merchandise acted in good faith; and that the entry of the merchandise at a less value than that returned upon final appraisement was without any intention to defraud the revenues of the United States, or to conceal or misrepresent the facts of the case, or to deceive the appraiser as to the value of the merchandise.

The petition is therefore granted.